IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BAMBI WOJTASZEK, *et al.* | : <br> : <br> :    4:17-cv-01888-RDM <br> : <br> : <br> : <br> : |
| v. | |
| BALD EAGLE FUEL & TIRE, INC. | |

**PLAINTIFFS' UNOPPOSED MOTION**
**FOR APPROVAL OF THE SETTLEMENT**

Bambi Wojtaszek and 13 opt-in plaintiffs (together "Plaintiffs")[1] ask the Court to sign and enter the accompanying proposed order approving the settlement of this Fair Labor Standards Act ("FLSA") collective action. The Settlement Agreement and Release ("Agreement") is attached as Exhibit 1, and the Plaintiffs' signed release forms are attached as Exhibit 2. As summarized below, the settlement deserves judicial approval:

**A. The Litigation Risks.**

Plaintiffs all worked as managers at Snappy's convenience stores owned by defendant Bald Eagle Fuel & Tire, Inc. ("Bald Eagle"). During some weeks within the applicable limitations period, Bald Eagle paid Plaintiffs salaries and classified

---

[1] In February 2018, the Court entered an order conditionally certifying this collective action and allowing notice to be issued to putative collective members. See Doc. 24. Eight of the opt-in plaintiffs joined the action in response to the ensuing notice. The other five had already joined the action. See id. at n. 1.

1

them as overtime-exempt under the "executive" exemptions to the FLSA and the Pennsylvania Minimum Wage Act ("PMWA"). So this is a typical "overtime misclassification" lawsuit. Absent settlement, the outcome would turn on two hotly contested issues:

Issue 1: Whether Plaintiffs' primary duties were sufficiently "managerial" to bring them within the executive exemption? Bald Eagle answers "yes" and argues that, although Plaintiffs spent some of their time performing routine duties (*e.g.*, running the cash register and stocking shelves), such duties were secondary to their primary duty of overseeing the store and supervising hourly employees. Plaintiffs disagree, arguing that their managerial duties were minor and relatively unimportant compared to their extensive non-managerial work. It is unclear which side has the better argument. And the decisional law (as well as the undersigned's experience handling these types of cases) confirms that "executive exemption" cases involving retail store managers are unpredictable. Compare Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233 (11th Cir. 2008) (Family Dollar store managers entitled to overtime) with Grace v. Family Dollar Stores, Inc., 637 F.3d 508 (4th Cir. 2011) (Family Dollar store managers properly classified as overtime-exempt).

Issue 2: If Plaintiffs were misclassified as overtime-exempt, how much overtime pay are they owed? Bald Eagle answers "not much" because Plaintiffs (i)

2

often worked 40 or fewer hours per week, (ii) rarely worked over 45 hours per week, and (iii) as salaried employees would merely be entitled to "half-time" damages for their overtime work, see, e.g., Ransom v. M. Patel Enterprises, Inc., 734 F.3d 377 (5th Cir. 2013).  Plaintiffs disagree and maintain that they (i) often worked 45-50 hours per week and (ii) are entitled to full "time and one-half" damages under the PMWA, see Chevalier v. General Nutrition Centers, Inc., 177 A.3d 280 (Pa. Super. 2017).[2]

In sum, while Plaintiffs believe they have a strong case, they also recognize that Bald Eagle is represented by skilled lawyers armed with credible defenses. Absent settlement, Plaintiffs possibly can (i) lose and recover nothing or (ii) win but recover less than the settlement amount.

### B. The Settlement Payments and Terms.

 Based on the discovery and after arms-length bargaining, the parties have agreed to settle this action for a total amount of $86,000, to be distributed as follows: (i) $57,620 will be shared by the 14 Plaintiffs and (ii) $28,380 will be paid to Plaintiffs' lawyers.  See Agreement at ¶¶ 2, 5, 6.  Plaintiffs will be paid around 35 days after the approval date.  See id. at ¶ 5.  However, in order to facilitate the settlement, Plaintiffs' lawyers have agreed to delay their payment until 90 days after the approval date.  See id. at ¶ 6.

---

[2]   Chevalier currently is on appeal to the Pennsylvania Supreme Court.

Each Plaintiff's individual payment amount is listed in a table attached to the Agreement.[3]  Here are some statistics regarding the payments to Plaintiffs:  (i) the average payment is $4,115.57; (ii) the highest payment is $7,628.81; (iii) the lowest payment is $854.55; (iv) the payments equate to $79.12 for each week worked as a salaried manager during the limitations period; and (v) the payments equate to approximately 3.75 hours of overtime pay per week under the "time and one-half" methodology recently endorsed in Chevalier, supra.[4]

Looking beyond the money payments, the settlement avoids provisions that have been criticized by judges in other FLSA settlements.  Most importantly, the release is narrowly tailored to the wage/overtime claims asserted in this lawsuit.  See Agreement at ¶ 4.  Also, the settlement agreement is publicly filed, and the confidentiality provision is very limited, merely preventing Ms. Wojtaszek and her lawyers from issuing a press release or otherwise publicizing the settlement.  See id. at ¶ 8.

### C.  Plaintiffs' Agreement with the Settlement.

The Court does not need to speculate regarding the 14 Plaintiffs' agreement

---

[3]  The payment to Ms. Wojtaszek includes a $3,000 service award.

[4]  If Chevalier were overturned by the Pennsylvania Supreme Court and Plaintiffs' unpaid overtime wages were based on the less generous "half-time" methodology, see, e.g., Ransom, supra, then the payments to Plaintiffs would equate to approximately 12 hours of overtime per week.  In the undersigned's view, however, Chevalier is unlikely to be overturned.  (Click HERE for access to an *amicus curiae* brief filed by undersigned on behalf of AFL-CIO and others in the Chevalier appeal).

4

with the settlement terms. That's because each Plaintiff has signed a release form that specifically lists his/her individual payment and describes the release. See Exhibit 2.

### D. Judicial Approval is Warranted.

In the absence of Third Circuit guidance, the judges of this Court generally review FLSA settlements for fairness. See, e.g., Pritchard v. Bimbo Bakeries USA, Inc., 2018 U.S. Dist. LEXIS 146328 (M.D. Pa. Aug. 23, 2018); Trevorah v. Linde Corp., 2018 U.S. Dist. LEXIS 65523 (M.D. Pa. Apr. 13, 2018); Iwaskow v. JLJJ, 2016 U.S. Dist. LEXIS 136676 (M.D. Pa. Sept. 28, 2016); Harrison v. Flint Energy Services, Inc., 2016 U.S. Dist. LEXIS 51674 (M.D. Pa. Apr. 15, 2016). In this regard, an FLSA settlement will be approved if it: (a) resolves a *bona fide* dispute under the FLSA; (b) is fair and reasonable to the employees; and (c) does not frustrate the FLSA. See Owens v. Interstate Safety Services, Inc., 2017 U.S. Dist. LEXIS 192247 (M.D. Pa. Nov. 21, 2018). In addition, the Court must deem reasonable any requested attorney's fees, see, e.g., id. at *7-9, and service awards, see, e.g., Creed v. Benco Dental Supply Co., 2013 U.S. Dist. LEXIS 132911, *19-20 (M.D. Pa. Sept. 17, 2013).

Here, the settlement – which is the result of extensive arms-length bargaining by experienced counsel – warrants judicial approval. First, as discussed in Section A above, the settlement resolves a *bona fide* FLSA dispute. Second, as

discussed in Section B above, the settlement payments to Plaintiffs are fair and reasonable and represent a substantial portion of their alleged unpaid overtime wages.  Third, as noted in Section B above, the settlement contains a narrow release, is publicly filed, and does not in any way frustrate the FLSA.  Fourth, the undersigned lawyers' combined fee/expense recovery stands at 33% of the settlement fund, which is well within the range of fees approved by this Court in FLSA cases.  See Chung v. Wyndham Vacation Resorts, Inc., 2015 U.S. Dist. LEXIS 77176, *7-8 (M.D. Pa. June 15, 2015) (Mariani, J.) (citing cases).[5]  Finally, Ms. Wojtaszek's $3,000 service award falls well within the range of service awards approved by this Court in FLSA cases.  See All Previously Cited MDPA Opinions.

**WHEREFORE**, plaintiffs respectfully request that the Court grant this motion and approve the settlement of this FLSA action.  A proposed order is attached.

Date:  November 27, 2018                              Respectfully,

                                                      /s/ Peter Winebrake
                                                      Peter Winebrake
                                                      R. Andrew Santillo
                                                      Mark J. Gottesfeld
                                                      WINEBRAKE & SANTILLO, LLC

---

[5] In addition, the fee falls *below* the undersigned's fee lodestar.  Detailed time records demonstrating this "negative" lodestar multiplier can be provided to the Court upon request.

                715 Twining Road, Suite 211
                Dresher, PA 19025
                (215) 884-2491
                *For Plaintiffs*